IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-251-CR





MARGARITO ORTEGA,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 97,702, HONORABLE BOB JONES, JUDGE PRESIDING



 




 This appeal is taken from an order revoking probation that had been granted
following appellant's conviction for bribery. Following revocation, the trial court assessed
appellant's punishment at ten years' imprisonment.

 Appellant advances ten points of error. Appellant sets forth these points as follows:



 1. The trial court abused its discretion in finding that appellant had failed to
attend Alcoholics Anonymous meetings because the evidence was
insufficient.


 2. The trial court abused its discretion in denying appellant's special plea of
collateral estoppel because the allegations in the State's motion to revoke
probation had already been adjudicated in a previous judicial proceeding.


 3. The trial court abused its discretion in overruling appellant's motion to
continue probationer on probation because the trial court was mandatorily
required to continue appellant on probation pursuant to Article 42.08 of the
Code of Criminal Procedure.


 4. The evidence was insufficient to revoke appellant's probation and the trial
court should have granted appellant's motion for directed verdict.


 5. The trial court denied appellant due process and due course of law in
continuing the revocation hearing for nine months, then revoking him when
he raised an objection.


 6. The trial court denied appellant due process and due course of law in
revoking appellant for failure to make probationary payments.


 7. Article 42.12, § 24(b) of the Code of Criminal Procedure is unconstitutional
because it conflicts with Bearden v. Georgia, 461 U.S. 670 (1983).


 8. The trial court denied appellant due process and due course of law in
revoking appellant for failure to finish community restitution service.


 9. The trial court denied appellant due process and due course of law in
revoking appellant for failure to submit a urine sample.


10. Appellant has been denied due process and due course of law because he did
not have a neutral or detached judge.



 On November 6, 1989, appellant entered guilty pleas before the trial court to
indictments charging bribery, aggravated perjury, and tampering with a governmental record. He
was granted ten years' probation in each case subject to certain conditions. A motion to revoke
probation was filed on August 16, 1990. After several re-settings, the revocation motion was
called again on December 6, 1990. Without a hearing, the conditions of probation were modified
and appellant was continued on probation. On May 3, 1991, an amended motion to revoke
probation was filed. Appellant entered a plea of "true." The trial court revoked probation in the
bribery case on May 3, 1991, and granted "shock probation." (1) Appellant filed a motion for new
trial and a brief pointing out that bribery was not an offense for which appellant could be accorded
"shock probation," Tex. Code Crim. Proc. Ann. art. 42.12, § 6(3) (West Supp. 1993), and that
appellant could raise the question of a void sentence at any time. See Heath v. State, 817 S.W.2d
335 (Tex. Crim. App. 1991). The trial court set aside the order of revocation and granted
appellant a new hearing.

 On May 31, 1991, appellant entered a plea of "not true" to the amended motion to
revoke probation. At the conclusion of the hearing, the trial court revoked probation. In its
formal judgment, the trial court found that appellant had violated his probationary conditions as
follows:



Has not paid probation supervision fees and is delinquent $386.25; Has not paid
fine and court costs and is delinquent $106.25; Failure to submit urine specimen
on April 20, 1990; Failure to obtain G.E.D.; Failure to attend Alcoholics
Anonymous Meetings; Failure to complete 300 hours of community service
restitution.



It is these findings that appellant challenges in his various points of error.

 A proceeding to revoke probation portends a possible deprivation of liberty, and
as such, the application of appropriate due process of law is constitutionally required. Caddell
v. State, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980); see also Gagnon v. Scarpelli, 411 U.S.
778 (1973). The burden of proof is upon the State to show by a preponderance of the evidence
that a probationer has violated the conditions of probation as alleged in the motion to revoke
probation. Jenkins v. State, 740 S.W.2d 435, 437 (Tex. Crim. App. 1983). That evidence must
create a reasonable belief that the probationer has violated a condition of probation as alleged by
the State. Id. When the State has sustained its burden, the decision whether to revoke probation
is within the discretion of the trial court. Flournoy v. State, 589 S.W.2d 705, 707 (Tex. Crim.
App. 1979); Galvan v. State, 846 S.W.2d 161, 162 (Tex. App.--Houston [1st Dist.] 1993, no
pet.). When the State does not meet its burden of proof, the trial court abuses its discretion by
revoking probation and deprives the probationer of due process. Cardona v. State, 665 S.W.2d
492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the trial court is the trier of fact
and the judge of the credibility of the witnesses and the weight of the testimony. Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The appellate court reviews the evidence in the
light most favorable to the trial court's judgment. Galvan, 846 S.W.2d at 162.

 With this background, we turn to the record in the instant case. At the outset, the
State concedes that the record of the revocation hearing does not show that the trial court made
findings on the alleged failure to obtain a GED or the alleged failure to attend Alcoholics
Anonymous (A.A.) meetings. The State urges that the formal judgment be reformed to delete any
finding as to the failure to obtain a GED or the failure to attend A.A. meetings. We agree with
the State. Moreover, the probation officer recanted his earlier testimony and admitted that the
probation office's records did show that appellant had attended A.A. meetings as required. 
Further, the amended conditions of probation reflect: "(24) Obtain GED within year(s)." 
Thus, no time limit within the probation period was placed on appellant in which to obtain his
GED.

 Next, we shall consider the court's finding that appellant failed to complete 300
hours of community service restitution. In both the original and amended conditions of probation,
appellant was required to "Complete 300 hours of Community Service Restitution at a place
designated by your probation officer. No less than 5 (five) hours a week" (emphasis added).

 Courts of the State of Texas having original jurisdiction of criminal actions have
the power, after conviction, to suspend the imposition or execution of sentence and to place a
defendant on probation and to reimpose such sentence under such conditions as the Legislature
may prescribe. See Tex. Const. art. IV, § 11A. This authority represents a limited grant of
clemency to the courts by the people. McNew v. State, 608 S.W.2d 166, 170 (Tex. Crim. App.
1978). Article IV, section 11A of the state constitution is not self-enacting and article 42.12 of
the Texas Code of Criminal Procedure is one of the enabling acts. Tex. Code Crim. Proc. Ann.
art. 42.12 (West Supp. 1993); Burson v. State, 511 S.W.2d 948, 950 (Tex. Crim. App. 1974). 
Section 11(a) of article 42.12 provides that the "court having jurisdiction of the case shall
determine the terms and conditions of probation and may, at any time, during the period of
probation alter or modify the conditions." Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a) (West
Supp. 1993) (emphasis added). Section 11(a)(10) of the statute provides that one of the
probationary conditions that may be imposed is "Participate, for a time specified by the court in
any community-based program, including a community-service work program designated by the
court." Id. (emphasis added). Further, sections 17(a) and (b)(1) of the Adult Probation Law
provide in part:



(a) If the court places a defendant on probation, the court may require, as a
condition of the probation, that the defendant work a specified number of
hours at a community service project or projects for an organization or
organizations named in the court's order . . . .


(b) The amount of community service work ordered by the court:


 (1) may not exceed 1,000 hours and may not be less than 320 hours for an
offense classified as a first degree felony.



Tex. Code Crim. Proc. Ann. art. 42.12, § 17(a), (b)(1) (West Supp. 1993) (emphasis added).

 The probationary condition in question requires the appellant to perform 300 hours
of community service restitution "at a place designated by your probation officer." In addition
to the obvious question of the validity of the trial court's delegation of authority to the probation
officer, (2) we observe that the probationary condition does not designate a community-service
program nor does it name the organization or organizations for which appellant may have to
perform 300 hours of work on a community service project.

 We conclude that neither the original nor amended condition of probation as to
community service restitution was a valid condition of probation upon which the revocation of
probation may be based. Cf. Tovar v. State, 777 S.W.2d 481, 496 (Tex. App--Corpus Christi
1989, pet. ref'd).

 Next, we turn to the trial court's finding that appellant failed to submit a urine
sample on April 20, 1990, some eleven months prior to revocation. The condition of probation
in question was "submit a urine specimen at the direction of the Probation Officer, daily if
ordered."

 The duty and responsibility for determining conditions of probation rest squarely
upon the judiciary. The trial court may not delegate this authority to the probation officer or
anyone else. DeGay, 741 S.W.2d at 449; McDonald v. State, 442 S.W.2d 386; 387 (Tex. Crim.
App. 1969); Johnson v. State, 672 S.W.2d 621, 623 (Tex. App.--Corpus Christi 1984, no pet.). 
The condition of probation as drafted permits the probation officer to decide if and when and
where a urine specimen is to be submitted. The condition constitutes an improper delegation of
authority. Moreover, the probationary condition appears to be vague and indefinite so that it
cannot be enforced. "Report to the probation officer as directed" has been held to be so vague
and indefinite that it cannot be enforced as it does not inform the probationer with sufficient
certainty of what he is to do. See Harris v. State, 608 S.W.2d 227, 230 (Tex. Crim. App. 1980);
Curtis v. State, 548 S.W.2d 57, 58 (Tex. Crim. App. 1977); cf. Cardona v. State, 665 S.W.2d
492 (Tex. Crim. App. 1984).

 Probation Officer Jerry Gray testified that he assumed supervision of appellant's
probation in September 1990. From the probation records, Gray testified that a "request" was
made on April 19, 1990, for appellant to submit a urine specimen on April 20, 1990, but the
returned lab report indicated that appellant had failed to appear that day. Gray did not identify
who made the "request" on April 19, 1990, or how that "request" was communicated to appellant. 
The evidence does not reflect whether appellant was informed in person of the "request" by
telephone or by mail, or if in fact he was notified at all. Appellant testified that he knew nothing
about any "request" to submit a urine specimen on April 20, 1990, and that any failure to submit
a specimen on the date in question was "a mistake." Appellant related that he submitted many
specimens and that he would give a urine specimen at any time he was directed to do so. Gray
testified that appellant submitted "quite a few" urine specimens on a weekly basis and that none
of the tests were positive. We conclude that the trial court abused its discretion in revoking
probation in the instant case on the basis of the probationary condition in question.

 We now address the trial court's findings that appellant had not paid his
probationary supervisory fee in the amount of $386.25 and was delinquent in the sum of $106.25
in paying his fine and court costs.

 When appellant was placed on probation in November 1989, he was required by
his probationary conditions to pay a fine of $1,000.00 and court costs in the amount of $107.50
for a total amount of $1,107.50 to be paid at $50.00 per month. In addition, appellant was
required to pay $40.00 per month as a probationary supervisory fee. Appellant was also required
to pay $95.00 in restitution and $10.00 to the Crime Stoppers Program. When the probationary
conditions were amended in December 1990, the conditions described above remained the same. 
The amended motion to revoke probation filed May 3, 1991, upon which the revocation was
based, alleged that appellant was delinquent in paying probation supervision fees in the amount
of $386.25 and delinquent in the sum of $106.25 in paying his fine and court costs.

 Jerry Gray, the probation officer who had been supervising appellant since
September 1990, testified that appellant was delinquent in paying his probationary supervisory
fees, court costs, and a fine as alleged in the amended motion to revoke probation. Gray reported
that his records showed that there had been a $40.00 payment on May 8, 1991, and that the last
payment before that was in October 1990. When asked on cross-examination if his records could
be wrong, the probation officer responded, "I suppose." (3) On re-direct examination, the officer
testified that he did not have any reason to believe his records were incorrect as to the amount of
payments. The State offered little or no evidence to show appellant's employment record or his
income in order to demonstrate that the failure to pay was intentional or willful.

 The court's records of which the trial court took judicial notice reflect that shortly
after appellant successfully completed an Intensive Supervision Project, he was granted a travel
permit to Hays and Williamson counties from July 31, 1990, until August 17, 1990, to apply for
employment. During this period, the original revocation motion was filed on August 16, 1990,
alleging, inter alia, delinquency in paying probationary fees, costs, and the fine imposed. 
Appellant was arrested on September 6, 1990, and remained in jail until September 17, 1990. On
September 11, 1990, while confined in jail, appellant was appointed counsel by the court, who
apparently obtained appellant's release on a personal bond. After court settings on September 13
and October 4, 1990, appellant filed on November 2, 1990, a motion to modify the conditions of
probation and reduce the payments required. He attached to the motion an "Affidavit of
Significant Financial Hardship." On December 6, 1990, appellant's counsel informed the trial
court that appellant's employment at Kwik Wash, his last place of employment, had been
terminated because the store had closed. On that day the trial court, without a hearing on the
revocation motion, modified the conditions of probation to require appellant to enroll in the Pre-employment Program and to remain in the program until officially discharged. On January 17,
1991, appellant informed the trial court that he had been sent to three or four potential jobs every
day but had not been given an interview. He told the trial court, however, that he had obtained
a construction job that was to start the next day. The amended revocation motion was filed on
May 3, 1991. Appellant was arrested on that date and was in jail at the time of the revocation
hearing.

 In his testimony at the revocation hearing, appellant stated that the Pre-employment
Program had worked and that he had obtained a job with the Laguna Construction Company. His
rate of pay was not established. (4) Appellant testified that after a month or so "we did have no
work" because of the rain. After being informed that the construction job was to be terminated
in about two weeks, appellant secured employment with a H.E.B. grocery store at $5.00 per hour. 
The date this employment commenced is not reflected by the record. Appellant told the
prosecutor that his income from the H.E.B. store was about $600.00 a month, which continued
until his incarceration on May 3, 1991. Appellant testified that he supported seven people
including himself, a non-working wife and five children. Appellant received food stamps to assist
in paying for food, but his housing assistance had been terminated because of his H.E.B.
employment. Appellant stated that he had to pay rent and his utilities bill which was almost one
hundred dollars. In addition, there were transportation costs since his 1984 Ford van had broken
down. Appellant related that there were costs to be paid in the other two cases in which he had
been placed on probation. Appellant also stated that there were costs for the school clothes for
the five children. One of appellant's conditions of probation was that he support his dependents. 
Appellant related that he tried to find the hours to complete his G.E.D., but an instructor told him
he needed glasses if he was going to complete the courses.

 When the probationer raises the defense of inability to pay compensation to
appointed counsel, probation fees, court costs, restitution, or reparations as required by
probationary conditions, the probationer must prove the affirmative defense by a preponderance
of the evidence. Tex. Code Crim. Proc. Ann. art. 42.12, § 24(b) (West Supp. 1993); (5) Stanfield
v. State, 718 S.W.2d 734, 738 (Tex. Crim. App. 1986). The State has the burden to prove that
the probationer intentionally failed to pay fees and costs. Smith v. State, 790 S.W.2d 366, 367
(Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). The State has this burden even if the
probationer fails to raise the issue of inability to pay as an affirmative defense. Washington v.
State, 731 S.W.2d 648, 650 (Tex. App.--Houston [1st Dist.] 1987, no pet.). Moreover, with
regard to a fine, the State has the burden under the Fourteenth Amendment to show that the
probationer willfully refused to pay or failed to make bona fide efforts to legally acquire the
resources to pay the fine. See Bearden v. Georgia, 461 U.S. 660 (1983).

 There was no testimony offered by the State tending to show that appellant willfully
failed or refused to work at suitable employment or failed to support his dependents. (6) The State
did not prove that appellant intentionally or willfully refused to make the payments he was ordered
to make as conditions of probation or failed to make bona fide efforts to legally acquire the
resources to make the payments. The State proved that appellant made some payments, but was
delinquent in certain amounts regarding his payments. It was the State's burden, however, to
prove by a preponderance of the evidence that appellant's failure to make these payments was
intentional. This it did not do. The trial court abused its discretion in revoking probation on this
basis. See Smith v. State, 790 S.W.2d 366, 367-68 (Tex. App.--Houston [1st Dist.] 1990, pet.
ref'd); Aranda v. State, 684 S.W.2d 794, 799 (Tex. App.--Fort Worth 1985, pet. ref'd). Cf.
Reyes v. State, 752 S.W.2d 591, 592-93 (Tex. App.--Corpus Christi 1987, no pet.).

 We sustain appellant's points of error one, four, six, eight and nine. In view of
our disposition of these points, we do not reach appellant's other contentions. The order revoking
probation is reversed and the cause remanded to the trial court.



 

 John F. Onion, Jr., Justice

[Before Justices Powers, Kidd and Onion*]

Reversed and Remanded

Filed: July 7, 1993

[Publish]














* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   It appears from the record that appellant was continued on probation in the aggravated
perjury and tampering with a governmental record cases.
2.   The relationship between the trial court and the probationer is contractual in nature. 
DeGay v. State, 741 S.W.2d 445, 449 (Tex. Crim. App. 1987). Normally, the trial court cannot
delegate its duty and responsibility for determining the conditions of probation to the probation
officer or anyone else. Id.; Jones v. State, 571 S.W.2d 191, 193 (Tex. Crim. App. 1978); Cox
v. State, 445 S.W.2d 200, 202 (Tex. Crim. App. 1969) (Onion, J., concurring). We are aware
of the provisions of section 10(d) of the Adult Probation Law which permit the court that has
placed a defendant on probation to authorize the probation officer "to modify the conditions of
probation for the limited purpose of transferring the probationer to different programs within the
probation program." Tex. Code Crim. Proc. Ann. art. 42.12, § 10(d) (West Supp. 1993)
(emphasis added). We do not construe this provision of the statute to authorize the probationary
condition at issue here. Further, we reject the reasoning in Lemon v. State, 837 S.W.2d 163, 169-171 (Tex. App.--El Paso 1992, pet. granted).
3.   The probation officer recanted his testimony that his records failed to show that
appellant had attended A.A. meetings, and he questioned the accuracy of his records as to
the hours of community service restitution.
4.   Appellant's previously filed affidavit indicated that his net pay at Kwik Wash was
$104.70 per week.
5.   The payment of a fine as a condition of probation is not listed in section 24(b) of article
42.12.
6.   These were conditions of probation that were not allegedly violated. That appellant was
not in violation of those conditions is a factor to be considered on the issue of whether
appellant intentionally failed to make the payments required.